Date signed June 28, 2011



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Minh Vu Hoang and Thanh Hoang | * | Case Nos. | 05-21078-TJC<br>05-25738-TJC |
| | * | Chapter | 7 |
| Debtors | * | Jointly Administered Under<br>Bankruptcy No. 05-21078-TJC | |
| ****************************************** | * | | |
| | * | | |
| Gary A. Rosen, Chapter 7 Trustee for Minh Vu Hoang and Thanh Hoang | * | | |
| Plaintiff | * | | |
| vs. | * | Adversary No. | 11-00087 |
| David Dahan, et al. | * | | |
| | * | | |
| Defendants | * | | |

**MEMORANDUM OF DECISION**

On March 10, 2011, Gary A. Rosen, Chapter 7 Trustee for the estates of Minh Vu Hoang and Thanh Hoang ("Plaintiff") filed a 105-page amended complaint against multiple defendants. Now before the Court is a motion to dismiss ("Motion") filed on April 29, 2011 by David Dahan,

1

Karin Dahan, Sarit Dahan, Maia, LLC, Raymonde, LLC, and Rokama, LLC (the "Defendants"). The complaint seeks, among other claims, turnover under 11 U.S.C. §542[1] of property acquired by the Defendants post-petition. As pertinent here, Defendants, relying on *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, PLLC*, 275 B.R. 737 (D. Md. 2001), argue that §542 actions are limited to recovery of assets that were in the hands of a defendant as of the petition date, and the section does not apply to post-petition transfers. Plaintiff opposes the Motion, arguing that both the plain language and the legislative history of §542 permit actions for turnover of assets that come into the hands of a third-party post-petition. The Court held a hearing on the Motion on June 15, 2011. For the reasons set forth herein, the Court will follow *Deckelbaum* and dismiss the §542 claims.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334, 157(a) and Local Rule 402 of the United States District Court of the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) & (O).

## Pertinent Facts as Alleged in the Complaint

Minh Vu Hoang (the "Debtor") filed a petition for relief under chapter 11 on May 10, 2005. The Debtor served as debtor-in-possession until the Plaintiff was appointed a chapter 11 trustee on August 31, 2005. The case was converted to chapter 7 on October 28, 2005, and the Plaintiff was appointed the chapter 7 trustee and continues to serve in that capacity.

Prior to filing bankruptcy, the Debtor engaged in a massive asset-concealment scheme. Since 1998, the Debtor purchased distressed real estate at foreclosure and sold those properties at a profit. The Debtor concealed those assets, through sham entities and paperless transactions, in an effort to impede judgment creditors from executing on any judgments and to avoid paying

---

[1] Hereinafter, all references to statues and to chapter will be to the Bankruptcy Code found at Title 11 of the United States Code, 11 U.S.C. §101 *et seq.*, unless otherwise noted.

income tax on the transactions. She used more than 200 sham entities, many of which were categorized as general partnerships. However, the purported partnerships were instrumentalities and alter egos of the Debtor.

David Dahan and Karin Dahan learned of the Debtor's bankruptcy on or before April 7, 2006, when they contracted to purchase 13013 8th Street, Bowie, Maryland, which was property of the estate and was being sold by the Plaintiff as chapter 7 trustee. David Dahan was a member or agent of Maia, LLC ("Maia"), Rokama, LLC ("Rokama"), and Raymonde, LLC ("Raymonde"). After learning of the Debtor's bankruptcy, David Dahan acted in concert with the Debtor to conceal property of the estate assets. Maia, Rokama, and Raymonde were created for the purpose of creating a false paper record, commingling funds, and the entities were used to commit fraud to the detriment of the Debtor's bankruptcy estate.

After the petition date, the Debtor and the Defendants purchased real property using funds that were property of the Debtor's bankruptcy estate, and took title in the name of sham entities. The purchased real property was either sold or refinanced. The proceeds were then distributed to one or more of the Defendants, who received them as agents for the Debtor. With respect to the proceeds, the Defendants were conduits or intermediaries.

During this post-petition time period, the Plaintiff did not have knowledge and did not provide consent or authorization for the post-petition transactions.

From September 16, 2005 to December 8, 2006, six pieces of real property were purchased using assets belonging to the Debtor's bankruptcy estate without Court approval. The six pieces of real property at issue here are: (1) 3119 Parkway, Cheverly, MD ("Parkway"); (2) 6304 Kenhowe Drive, Bethesda, MD ("Kenhowe"); (3) 13416 Sherwood Forest Drive, Bethesda,

MD ("Sherwood"); (4) 7654 Bay Street, Pasadena, MD ("Bay Street"); (5) 6700 Sundown Rd., Gaithersburg, MD ("Sundown"); and (6) 11819 Milbern Dr., Potomac, MD ("Milbern").

Rokama, LLC, which listed the Debtor as the registered agent, purchased the Parkway and Kenhowe properties using funds traceable to the Debtor's bankruptcy estate. Rokama, LLC received $338,518.78 from the proceeds of the Parkway sale and $326,000 was disbursed to David Dahan. He used the proceeds to purchase $180,000 in diamonds that were delivered to the Debtor, and also used $146,000 to pay down the balance on a home-equity line of credit in the name of David Dahan and Sarit Dahan. After the line of credit was paid down, an equal amount was drawn and used for the Debtor's benefit. Lastly, Maia received $7,914.59 from the proceeds. When the Kenhowe property was sold, Rokama received $569,547.25 in proceeds and David Dahan distributed those funds to Maia and David Dahan and Sarit Dahan.

On May 19, 2006, Sherwood was sold at auction to Kashan LLC for $467,000. Most of the proceeds belonged to the Debtor's estate but were disbursed to David Dahan, Rokama, Sarit Dahan, and Maia. First, David Dahan and Sarit Dahan received $230,500 to pay down a home-equity line of credit that was secured by a deed of trust in their residence. Funds drawn on the line of credit were paid to the Debtor. Second, David Dahan and Sarit Dahan deposited $34,475 from the proceeds into their personal bank account. Third, David Dahan used $4,000 of the proceeds to pay a contractor doing work on his personal property. Fourth, Maia received $29,000 directly and also received another $10,000 to pay an architect working on a real-estate project owned by Maia. Lastly, $41,451.65 in proceeds was used to pay taxes and loan fees.

Ballinger GP, a sham entity used by the Debtor, purchased Bay and sold it on July 18, 2007. Approximately $150,000 in proceeds of that sale was used to pay down the balance owed

4

on a home-equity line of credit in the name of David Dahan and Sarit Dahan, secured by a deed of trust on their residence. Funds drawn on the line of credit were paid to the Debtor.

As to the last two properties, Sundown and Milbern, the proceeds were distributed to sham entities. Maia received $56,000 from the proceeds of the sale of Sundown. And Rokama received $15,000 when Milbern was refinanced.

## Conclusions of Law

Defendants bring the Motion under Fed. R. Civ. P 12(b)(6), made applicable here by Fed. R. Bank. P. 7012. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ---,---, 129 S.Ct. 1937,1949, 173 L.Ed.2d 868 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim that is plausible on its face. *Id.* at 1950 (citing *Bell Atlantic Corp. v. Twombly (Twombly)*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than the sheer possibility a defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

The Complaint alleges that the Defendants obtained property of the estate after the petition date. In subsections A of Counts I-VI, Plaintiff seeks to recover the property under §542(a). That section provides

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to

5

> the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. §542(a). Defendant contends that §542 is limited in its application to property that is in the possession of a defendant at the time of the filing of the bankruptcy case. Defendants rely on *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C . et al. (Deckelbaum)*, 275 B.R. 737 (D.Md. 2001) and *In re 31-33 Corp.,* 100 B.R. 744 (Bkrtcy. E.D.Pa. 1989). Plaintiff argues that §542 is not so restrictive and can be applied to property that comes into the possession of a defendant post-petition. Plaintiff contends *Deckelbaum* is wrongly decided and is not binding on this Court.

In *Deckelbaum*, the Chapter 11 trustee brought suit against several of the debtor's law firms to recover post-petition transfers that were made on account of pre-petition obligations of the debtor. As pertinent here, the trustee alleged that he was entitled to turnover of the payments pursuant to §542(a) and as unauthorized post-petition transfers under §549(a). On summary judgment, the United States District Court for the District of Maryland dismissed the §542 claims, ruling that §542 provides for the turnover of pre-petition transfers, while §549 is the appropriate means to attack post-petition transfers. The Court observed:

> Several policy reasons support the confinement of actions based on post-petition transfers to section 549, rather than section 542. For example, if both section 542 and 549 were available to avoid post-petition transfers, the statute of limitations contained within § 549(d) would be rendered meaningless, since a trustee who is time-barred by § 549(d) could merely invoke § 542. *See In re 31-33 Corp.*, 100 B.R. at 747-48; *Burton v. Hydroquip, Inc.*, 227 B.R. 244, 260 (Bankr. E.D. Pa. 1998). Therefore, section 542 is also an inappropriate means for Plaintiff's attempt to recover the postpetition legal fees.

*Deckelbaum*, supra, 275 B.R. at 741. The Court also acknowledged the statement by the Fourth Circuit Court of Appeals in *Vogel v. Russell Transfer, Inc*., 852 F.2d 797, 800 (4th Cir. 1988),

6

that the "trustee's power to avoid transfers of property of the estate that occur *after* commencement of a bankruptcy case is generally given in section 549."

This Court will follow *Deckelbaum* and dismiss Plaintiff's §542 claims. However, if the Court were writing on a clean slate, it might well reach a different result.[2] The *Deckelbaum* court focused on the structure of the Bankruptcy Code, and in particular, the interplay between §542 and §549. But the plain language of §542 does not limit its application to recovery of property that is in a defendant's possession only as of the petition date. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S.Ct. 1026 (1989) (courts should interpret a statute in accordance with its plain meaning). To the contrary, §542 recovery can be sought from "an entity . . . in possession, custody, or control *during the case* of property . . . ." 11 U.S.C. §542 (emphasis added). The specific application of the section to property that is in the possession, custody or control of a defendant "during the case" would seem contrary to a determination that it only applies to pre-petition transfers.

Defendant contends that the phrase "during the case" was simply intended to mean that a defendant must be in possession at some time during the case as long as it was in possession as of the petition date. But Defendant's interpretation of "during the case" renders the phrase superfluous. Where an entity is in possession of debtor's property pre-petition and transfers it

---

[2] The Plaintiff states the Court ruled that §542 applied to post-petition transfers in *Rosen v. Gemini Title & Escrow, LLC, et al., (Gemini),* Case No. 09-00853-TJC, Docket Nos. 23, 24. The Plaintiff is incorrect. In *Gemini*, no party cited the published *Deckelbaum* opinion referred to in text, although the parties cited to an earlier unpublished *Deckelbaum* opinion that appears to be inconsistent with the published opinion. *See Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 2000 WL 1593647 (D. Md. 2000). In that opinion, the District Court was faced on summary judgment with the assertions that "postpetition transfers are only to be avoided under Section 549 and even if Section 542 were applicable to this action, the Trustee would have to establish that the defendants are still in possession or control of the funds." *Id.* at *3 (quotations omitted). The court stated that "these assertions" fail to adequately state the current law in the Fourth Circuit. *Id.* Perhaps, because of this statement in the unpublished opinion this Court in *Gemini* never addressed whether §542(a) applies to post-petition transfers. In any event, in *Gemini*, this Court resolved three issues on the motion to dismiss: (1) failure to state a claim (based on factual allegations without regard to whether the transfers were pre-petition or post-petition); (2) whether the doctrine of *in pari delicto* barred the plaintiff's claims; and (3) whether plaintiff's claims were barred by the statute of limitations. *See Gemini,* Tr., Docket No. 35.

pre-petition (*i.e*, is never in possession "during the case"), the entity is not in possession of "property of the estate" but was only in possession of property that would be property of the estate if the case had been filed while the entity was in possession. *See In re Shearin*, 224 F.3d 353, 356 (4th Cir. 2000) (in light of the phrase "during the case" the defendant need not be in possession of the property at the time the §542(a) action is filed, but must have been in possession post-petition[3]). Moreover, if §542(a) is read to require that the defendant must be in possession as of the petition date, by definition the defendant would be in possession "during the case" and the phrase is unnecessary. Finally, as Plaintiff points out, the legislative history seems clear that the phrase "during the case" was intended to mean that §542 applied where a defendant received property post-petition. *See* Pl. Br. at 13; Docket No. 23, Attachs. 1-4.

Moreover, §542 is limited to recovery of property that the trustee "may use sell or lease under section 363, or that the debtor may exempt under section 522 . . . ." Under §363, the trustee may use, sell or lease "property of the estate." 11 U.S.C. §363(b)(1). The definition of "property of the estate" includes many instances of property rights that the estate acquires post-petition. *See e.g.*, 11 U.S.C. §§541(a)(3); (4); (5); (6); and (7). Similarly, the exemptions of §522 apply to "property of the estate" and may well apply to post-petition property. Thus, leaving aside property that is of inconsequential value, the only limitations on recovery in §542 (*i.e.,* to property that the trustee may use, sell or lease or that the debtor may exempt) do not warrant a determination that the section is applicable only to pre-petition transfers.

The courts that conclude that §542 is limited to cases where the defendant is in possession of recoverable property as of the petition date do so based on §549. *Deckelbaum* at

---

[3] As the Court recognized in *Shearin*, "The notation in the opinion of the bankruptcy court in this case, that Hager's prepetition receipt and disposal of the sum of $40,000 pre-petition made the case clearly outside of §542(a)'s reach was correct as a far as its reference to time goes . . . ." 224 F.3d at 357.

8

741; *In re 31-33* at 747.  They reason that §549 specifically addresses post-petition transfers and contains important limitations that would not apply to a post-petition §542 action.  *Id*.

On their face at least, §542(a) and §549 address different circumstances.  Section 542(a) addresses cases where the defendant is or has been *in possession* of property of the estate, while §549 addresses *unauthorized post-petition transfers* of property.  Nevertheless, generally speaking, because one can be in possession of property only where one has received a transfer of property, there is substantial overlap between the two provisions.  But merely because there may be overlap in the application of the two statutory provisions does not necessarily mean that one, §549, limits the other, §542.  For example, §542(c) specifically addresses post-petition transfers of property of the estate by one in possession without any regard or reference to §549.  No one could argue that §542(c) does not apply where it is otherwise applicable because of the existence of §549.

## Conclusion

In sum, in the view of the Court, the question is not free from doubt.  Nevertheless, as stated above, the Court will follow *Deckelbaum* and dismiss the §542 claims.  An order consistent with this memorandum follows.

Cc:   Plaintiff
      Plaintiff's Counsel
      Defendants
      Defendants' Counsel
      United States Trustee


**END OF MEMORANDUM**